[No. 20609-2-III. Division Three. April 17, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JARED MARCUM, *Appellant*.

*James E. Egan*, for appellant.
*Andrew K. Miller, Prosecuting Attorney*, for respondent.

SWEENEY, J. — This is a prosecution for possession of drugs and for unlawful possession of a firearm. The defendant, Jared Marcum, makes two assignments of error. First, he contends the judge's conclusion that the police had reasonable suspicion to stop him is not supported either by the officer's two earlier contacts with Mr. Marcum and the specific car he was in, or by the officer's knowledge that Mr. Marcum's license was suspended. We conclude that these facts support the investigative stop. Mr. Marcum next contends that the absence of an essential element of the crime of unlawful possession of a firearm—knowledge—renders the information charging him fatally defective. We agree and reverse that conviction.

## FACTS

Kennewick police officer Wayne Meyer encountered Mr. Marcum and a particular blue-green Subaru three times in July 2000. First, Mr. Marcum was a passenger in the Subaru when Officer Meyer arrested the driver. A couple of days later, Mr. Marcum and the Subaru were the object of an assault investigation. Officer Meyer spotted Mr. Marcum and the Subaru at a Kennewick address and talked to him. Officer Meyer ran a license check and learned that Mr. Marcum's driver's license was suspended. Mr. Marcum said he had borrowed the Subaru. Officer Meyer warned Mr. Marcum that he would be arrested if he were caught driving.

A week after this, the Subaru passed Officer Meyer on the street at about two o'clock in the morning. He recognized the license number and could see that the driver was the sole occupant. He suspected it was Mr. Marcum and followed the car. Officer Meyer could see that the driver looked like Mr. Marcum as he got closer. He was certain enough to call for backup before stopping the car. Officer Meyer's identification of Mr. Marcum was not 100 percent certain until Mr. Marcum stepped from the car. But once Mr. Marcum got out of the car, Officer Meyer positively identified him.

Officer Meyer handcuffed Mr. Marcum. He called in a license check to confirm that Mr. Marcum's license was suspended. It was. And he arrested Mr. Marcum. Police then impounded the car and searched it. They found a loaded .45 caliber handgun, a radio scanner, cell phones and pagers, and methamphetamine.

The State charged Mr. Marcum by information with possession of a controlled substance and unlawful possession of a firearm. Mr. Marcum moved to suppress everything seized from the car. The court found that Officer Meyer knew Mr. Marcum by sight, knew his license was suspended, and knew he was associated with the Subaru. Officer Meyer could then develop a reasonable, articulable suspicion that the sole occupant of the car was driving with a suspended license. The court concluded that this was a sufficient basis for the stop, and denied the motion to suppress.

A jury convicted Mr. Marcum of one count of possession of a controlled substance, methamphetamine, and one count of unlawful possession of a firearm.

## DISCUSSION

Mr. Marcum assigns error to the denial of his motion to suppress. And he challenges the sufficiency of the information to support his conviction for unlawful possession of a firearm, albeit for the first time on appeal.

FACTUAL FOUNDATION FOR THE STOP AND ARREST

Mr. Marcum contends that Officer Meyer's stop was based on no more than a hunch.

■ ■ We review the court's findings on a motion to suppress for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644-47, 870 P.2d 313 (1994). And we review de novo the legal conclusion the judge drew from these findings. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997) (citing *Hill*, 123 Wn.2d at 647).

■ ■ Warrantless searches and seizures are per se unreasonable. *State v. Williams*, 102 Wn.2d 733, 736, 689

P.2d 1065 (1984). There are, however, exceptions to this general rule. *State v. Ladson*, 138 Wn.2d 343, 356, 979 P.2d 833 (1999). Police may conduct a brief, warrantless stop to investigate a reasonable suspicion of criminal activity based on articulable facts. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. O'Cain*, 108 Wn. App. 542, 548, 31 P.3d 733 (2001). The State claims that both the investigatory stop and the arrest fall within this exception. But Mr. Marcum says this was not reasonable suspicion. He asserts it was a hunch, pure and simple. The case law in this state does not support his position.

*State v. O'Cain* illustrates a stop based on no more than a hunch. There, an officer on drug detail patrolled a drug neighborhood. He saw people standing next to a car in a 7-Eleven parking lot. He had a hunch (a hunch based on experience but nonetheless a hunch) that they were buying and selling drugs. He called in the vehicle license number and drove on. Dispatch responded that the car had been reported stolen. Based on this, he called for backup, returned to the parking lot, and seized the vehicle and its occupants. *O'Cain*, 108 Wn. App. at 545-46. The court held that the officer's initial suspicion was based on no more than a hunch. The stolen vehicle dispatch was the only factual basis for the arrest. And standing alone, an unverified stolen vehicle report is no better than an anonymous tip. It does not provide probable cause to arrest. *Id.* at 552-53. And a conclusory allegation obtained from an unverified computer compilation is not, by itself, sufficient. *Id.* at 552, 555.

The facts of *O'Cain* are distinguishable in several respects. Most notably, Officer Meyer received the dispatch report of Mr. Marcum's license status *after* the stop. At the hearing, Mr. Marcum did not challenge the reliability of the dispatch report of his license suspension. His only complaint was that Officer Meyer stopped him on a mere hunch. Report of Proceedings (Mar. 16, 2001) at 12.

■ Officer Meyer did not need probable cause to arrest in order to effect a lawful stop. He needed only a reasonable

suspicion based on specific articulable facts that a law was being broken. *O'Cain*, 108 Wn. App. at 554. And for that, Officer Meyer relied on his personal knowledge. He knew Mr. Marcum by sight. And he knew Mr. Marcum's license was suspended. He had talked to Mr. Marcum twice in the previous week. Both times Mr. Marcum had some connection with the blue-green Subaru. And he was able to identify the driver with sufficient certainty to stop him. This is more than a hunch. It was enough to stop the Subaru and confirm the identity and license status of its driver.

■ Mr. Marcum argues that he might have obtained a driver's license during the four days since his last contact with Officer Meyer. Again, under recent case law, this does not negate otherwise reasonable suspicion. In *State v. Perea*, a license check seven days before the stop was sufficient, not only for articulable suspicion of driving without a license, but also for probable cause to arrest. *State v. Perea*, 85 Wn. App. 339, 343, 932 P.2d 1258 (1997). Here, four-day-old information was fresh enough to provide a reasonable suspicion for a brief stop to find out how things stood. The court correctly concluded that the factual basis for the stop was a reasonable suspicion based on articulable facts and ruled that the factual basis was met.

■■ Mr. Marcum next complains that the dispatcher's confirmation of a suspended license was not enough to support the stop. But the radio status check took place after the stop, and after Mr. Marcum got out of the car and was handcuffed. And, of course, Officer Meyer's positive identification of Mr. Marcum after the stop together with the dispatch report of a suspended license is probable cause to arrest. RCW 10.31.100(3)(e) authorizes a warrantless custodial arrest for driving with a suspended license. *State v. Reding*, 119 Wn.2d 685, 691, 835 P.2d 1019 (1992). The factual basis for this warrantless arrest was *probable cause*. *O'Cain*, 108 Wn. App. at 544.

Both the stop and the arrest were, then, lawful. The search of the car was, therefore, also lawful. So the court

correctly denied the motion to suppress evidence found in the car.

ADEQUACY OF INFORMATION CHARGING UNLAWFUL POSSESSION OF A FIREARM

> A person . . . is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter.

RCW 9.41.040(1)(a). The information here accuses:

> JARED MARCUM

of the crime(s) of: COUNT I: UNLAWFUL POSSESSION OF A FIREARM IN THE FIRST DEGREE, RCW 9.41.040(1)(a); . . . committed as follows, to-wit:

> That [he] . . . did own or have in his/her possession or control a firearm, to wit: [described] after having been convicted [of a serious offense] . . . .

Clerk's Papers (CP) at 129.

Mr. Marcum begins his argument by noting that knowledge is an essential element of unlawful possession of a firearm, despite its absence from the statute. *State v. Anderson*, 141 Wn.2d 357, 5 P.3d 1247 (2000). And, he continues, the information here fails to notify him that knowledge is an essential element.

The State responds that the use of the word "unlawful" possession of a firearm is sufficient to give notice that knowledge is an essential element of the offense, if the information is liberally construed.

■■ A challenge to the sufficiency of the charging document to support a criminal conviction implicates the due process requirement of notice under Washington Constitution, article I, section 22 (amendment 10) and the sixth amendment to the Constitution of the United States. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). Review is de novo. *State v. Valdobinos*, 122 Wn.2d 270, 858 P.2d 199 (1993).

■ Mr. Marcum challenges the sufficiency of the information for the first time on appeal. We therefore construe the information more liberally in favor of its validity. *Kjorsvik*, 117 Wn.2d at 102. The information must nonetheless contain in some form language that can be construed as giving notice of the essential elements. And if it does not, " 'the most liberal reading cannot cure it.' " *State v. Moavenzadeh*, 135 Wn.2d 359, 362-63, 956 P.2d 1097 (1998) (quoting *State v. Campbell*, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995)).

To be statutorily sufficient, an information must clearly and distinctly set forth the act or omission that is alleged to constitute the crime in ordinary and concise language, so that a person of common understanding is able to understand what is intended. RCW 10.37.050(6). The act or omission charged as the crime must be stated with "such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case." RCW 10.37.050(7).

■ An information is sufficient—when liberally construed—if it contains some language from which notice of each element can, by a fair construction, be found. *Kjorsvik*, 117 Wn.2d at 105. But all essential elements of a crime, including nonstatutory elements such as knowledge, must be included in order to afford notice of the nature and cause of the charge. *Id.* at 97.

■ The information may incorporate statutory language, so long as the words of the statute itself " ' "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished." ' " *Kjorsvik*, 117 Wn.2d at 100 (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L. Ed. 1135 (1881))).

■ Unlawful possession (RCW 9.41.040(1)(a)) implicitly includes the element of knowledge. *Anderson*, 141 Wn.2d at 362-63. But the State cannot rely on the statutory language for the information because the statute is silent

on knowledge as an element. RCW 9.41.040(1)(a); *State v. Leach*, 113 Wn.2d 679, 688, 782 P.2d 552 (1989). The essential element, knowledge, must then be added to the information. *Kjorsvik*, 117 Wn.2d at 100 (quoting 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 448-52 (1984)).

 The State need not prove that the defendant knew that possession of a firearm was unlawful. But it must prove that the defendant knew he possessed the firearm. *Anderson*, 141 Wn.2d at 361. The knowledge element must therefore appear in the body of the information. Or the information must include language from which the knowledge element can be inferred. Simply to state that the offense charged is unlawful possession is not enough.

Here, the information charges Mr. Marcum with the crime of unlawful possession of a firearm. But this is the only language that might conceivably be construed as charging knowledge. The description of the act or omission allegedly constituting the crime does not contain the word "unlawfully." It says "in violation of RCW 9.41.040(1)(a), did own or have in his/her possession or control a firearm . . . ." CP at 129.

This distinguishes the Marcum information from others which courts have found to be sufficient. In *State v. Cuble*, the information charged unlawful possession of a firearm in the first degree, committed as follows: " '[that Mr. Cuble] did unlawfully and feloniously own, have in his possession, or under his control a firearm . . . .' " *State v. Cuble*, 109 Wn. App. 362, 367, 35 P.3d 404 (2001) (emphasis omitted) (quoting Clerk's Papers at 1-3). Likewise, in *State v. Krajeski*, the charge was unlawful possession of a firearm. The conduct constituting the crime was that the defendant " 'did unlawfully and feloniously own, have in his possession, or under his control a firearm . . . .' " *State v. Krajeski*, 104 Wn. App. 377, 381-82, 16 P.3d 69 (quoting Clerk's Papers at 22-23), *review denied*, 144 Wn.2d 1002 (2001).

Here, the charging document does not contain language from which the knowledge element could be found or

reasonably inferred. The information is, even by a liberal construction, then facially deficient.

Mr. Marcum need not show prejudice if the information cannot be saved even by a liberal reading. A facially deficient information will not support a conviction. We therefore reverse his conviction for unlawful possession of a firearm. *Moavenzadeh,* 135 Wn.2d at 362-63.

We affirm the trial court's denial of the CrR 3.6 motion and reverse the conviction for unlawful possession of a firearm.

KATO, A.C.J., and KURTZ, J., concur.