16 P.3d 69 (2001)
104 Wash.App. 377
STATE of Washington, Respondent,
v.
Jason Peter KRAJESKI, Appellant.
No. 24763-1-II.
Court of Appeals of Washington, Division 2.
January 5, 2001.
*70 Patricia Anne Pethick (Court Appointed), Tacoma, for Appellant.
Kathleen Proctor, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
WANG, J.P.T.[*]
Jason Krajeski appeals his convictions for possession of stolen property and unlawful possession of a firearm. He contends that *71 the State relied upon an unlawful search of his apartment in which apartment managers and his mother acted as agents of the State when they found stolen bicycles and, later, a firearm. He also contends that the information that the State filed failed to include knowledge as an element of unlawful possession of a firearm. We affirm.

FACTS
On August 22, 1998, a black and yellow Cannondale mountain bike valued at approximately $2,600 was stolen from a Tacoma bicycle store. Officer Kevin Lorberau of the Tacoma Police Department learned from a juvenile informant that the bicycle was stolen by another juvenile and a person named "Jason" who was white, 22 years-old, and worked at Discount Tire. The informant said that Jason had the bicycle in his apartment.
On September 5, 1998, Officer Lorberau went to Discount Tire and spoke with Jason Krajeski, a white 23-year-old employee, about the burglary and bicycle. Krajeski denied any knowledge and refused Officer Lorberau's request to search his apartment. Officer Lorberau arrested Krajeski on four unrelated felony warrants and two misdemeanor warrants and booked him into jail.
Officer Lorberau contacted Krajeski's neighbor, who was also Krajeski's supervisor at work. The neighbor told him that he had seen an expensive Cannondale mountain bicycle in Krajeski's apartment on August 28 or 29. While talking to the neighbor, the apartment manager and assistant manager (landlords) approached Officer Lorberau and said they had called Krajeski's mother to come and get his dog. They were worried that the dog would damage the apartment while Krajeski was in jail. They asked Officer Lorberau whether he wanted to search Krajeski's apartment or have them do so. He said no, since the defendant had refused to give his consent and the search would be illegal. He told them he could not authorize them to search and that whatever they did was of their own free will.
The landlords and Krajeski's mother entered the apartment. Officer Lorberau did not question the landlords in any way before or after they entered the apartment. He also did not ask Krajeski's mother to check the apartment. Nevertheless, when they exited the apartment, both the landlords and the mother contacted Officer Lorberau and told him they had seen a black and yellow Cannondale mountain bike there. Based upon the statements of the landlords, Krajeski's mother, and other witnesses, Officer Lorberau submitted an affidavit of probable cause and obtained a warrant to search Krajeski's apartment. He then searched the apartment and found the stolen Cannondale mountain bike and a stolen Trek mountain bike.
On September 7, 1998, Krajeski's mother returned to the apartment to remove and safeguard Krajeski's belongings while he was in jail. She did not have his permission to do so. She found a loaded automatic handgun, which she knew he should not have. She turned it over to the Tacoma Police Department because she did not want to take the handgun to her house in her car. No one asked her to search the apartment and no law enforcement officer knew she was going back into Krajeski's apartment. Krajeski later asked her whether she found the pistol.
The State charged Krajeski with two counts of possession of stolen property for the two bicycles and one count of unlawful possession of a firearm. The State filed an amended information on January 25, 1999, which provided in part:
That JASON PETER KRAJESKI, in Pierce County, Washington, on or about the 5th day of September, 1998, did unlawfully and feloniously own, have in his possession, or under his control a firearm, he having been previously convicted in the State of Washington or elsewhere of a felony, to wit: Possession of Stolen Property in the Second Degree, contrary to RCW 9.41.040(1)(b), and against the peace and dignity of the State of Washington.
Clerk's Papers at 22-23.
Krajeski moved to suppress evidence of the bicycles as fruits of an illegal search based on lack of probable cause. The trial court held a CrR 3.6 hearing and determined that Krajeski's mother and landlords entered his apartment for their benefit and not to aid *72 law enforcement. The trial court concluded that they were not acting as agents of the State and denied Krajeski's motion. The CrR 3.6 findings of facts and conclusions of law were filed on August 4, 1999.
Krajeski was convicted on stipulated facts on all three counts on April 20, 1999.[1]

ANALYSIS
I. SEARCH BY LANDLORDS AND MOTHER
A trial court's determination that a search did not violate the Fourth Amendment because it was a private search is a legal conclusion reviewed de novo. United States v. Reed, 15 F.3d 928, 930 (9th Cir. 1994).
A defendant has the burden of showing that a search was government action. State v. Clark, 48 Wash.App. 850, 856, 743 P.2d 822 (1987). Generally, the Fourth Amendment does not protect against unreasonable intrusions by private individuals. Reed, 15 F.3d at 930-31. "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies...." Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The Fourth Amendment does, however, prohibit searches by private individuals who are acting as government instruments or agents. Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The mere purpose of private individuals to aid the government is insufficient to transform an otherwise private search into a government search. State v. Sweet, 23 Wash.App. 97, 100, 596 P.2d 1080 (1979). The critical factors for determining whether a private party is acting as a government instrument or agent are: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends. Clark, 48 Wash.App. at 856, 743 P.2d 822; Reed, 15 F.3d at 931.
There were two searches in this case. In the first search, Krajeski's mother and the landlords entered Krajeski's apartment and saw the black and yellow Cannondale mountain bike. In the second search, Krajeski's mother found a gun. We consider each search separately. See, e.g., United States v. Miller, 688 F.2d 652, 657 (9th Cir.1982) (considering separately each invasion of privacy).
Krajeski contends that his mother and the landlords acted as state agents when they entered his apartment, saw the black and yellow Cannondale bike, and reported it to the police. However, the landlords and mother entered the apartment because of Krajeski's dog.[2] Officer Lorberau specifically declined to have the landlords search on his behalf, told them it would be illegal, and said he could not authorize them to do so. He also did not ask Krajeski's mother to check the apartment. When the landlords and mother returned from the apartment, he did not question them. Nevertheless, they contacted him and told him that the Cannondale mountain bike was there. Officer Lorberau did not acquiesce in the search. The trial court correctly decided that the landlords and Krajeski's mother were not acting as agents of the State conducting an illegal search.
Similarly, Krajeski's mother did not act as an agent of the State when she returned to the apartment a few days later, after the search warrant had already been executed. She went on her own initiative, discovered the gun, and turned it over to the police. The police did not know that she would return to the apartment, and her intent in doing so was to gather and preserve her son's belongings while he was in jail.
*73 Krajeski also assigns error to the sufficiency of the affidavit in support of the search warrant and whether the police lacked probable cause to search Krajeski's apartment. These arguments are without merit.

II. KNOWLEDGE OF UNLAWFUL POSSESSION OF A FIREARM
After Krajeski filed his appeal, our Supreme Court held that knowledge is an essential element of unlawful possession of a firearm. State v. Anderson, 141 Wash.2d 357, 366-67, 5 P.3d 1247 (2000). Krajeski retained new counsel and we granted his motion to file an amended brief raising for the first time the issue of knowledge based on Anderson.
"All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." State v. Kjorsvik, 117 Wash.2d 93, 97, 812 P.2d 86 (1991). "Knowing" possession of a firearm is an essential element of the crime of unlawful possession of a firearm. Anderson, 141 Wash.2d at 359, 5 P.3d 1247.
Krajeski contends that we must reverse and dismiss his conviction of unlawful possession of a firearm because the amended information failed to allege that he knowingly possessed the firearm. The State responds that the information sufficiently alleged that Krajeski knowingly possessed the firearm. The information alleged that Krajeski "did unlawfully and feloniously own, have in his possession, or under his control a firearm...." Clerk's Papers at 22-23. The State argues that the use of the phrase "unlawfully and feloniously" and the use of the words "own" and "under his control" fairly apprised Krajeski that the State was alleging his possession was knowing.
Charging documents challenged on appeal for adequacy after the verdict are liberally construed in favor of validity. Kjorsvik, 117 Wash.2d at 102, 812 P.2d 86. The test for adequacy under the liberal standard is a two-prong one: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86.
Under the first prong it is not necessary to use the exact words of a nonstatutory case law element in a charging document. Kjorsvik, 117 Wash.2d at 108-09, 812 P.2d 86. The charging document is sufficient "if words conveying the same meaning and import are used." Kjorsvik, 117 Wash.2d at 108, 812 P.2d 86. When the exact words are not used, "the question ... is whether all the words used would reasonably apprise an accused of the elements of the crime charged." Kjorsvik, 117 Wash.2d at 109, 812 P.2d 86. RCW 10.37.050(6) requires that the charged crime be "clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended...." "If the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it." State v. Campbell, 125 Wash.2d 797, 802, 888 P.2d 1185 (1995).
State v. Nieblas-Duarte held that the phrase "unlawfully and feloniously" adequately conveys the "guilty knowledge" element in an information. 55 Wash.App. 376, 378, 380-82, 777 P.2d 583 (1989) (unlawful delivery of a controlled substance) (cited approvingly in State v. Johnson, 119 Wash.2d 143, 148, 829 P.2d 1078 (1992)).[3] The court surveyed federal and state cases and commentators and concluded that the "weight of authority" favors the rule that
[a]n indictment which charges that a person "unlawfully and feloniously" performed an act is equivalent to alleging that he knowingly did so, and thus supplies the element of knowledge where that element *74 is necessary for averment in the indictment.
Nieblas-Duarte, 55 Wash.App. at 380, 777 P.2d 583 (quoting State v. Reynolds, 229 Or. 167, 172, 366 P.2d 524 (1961)). The Nieblas-Duarte court also commented that "it would certainly be better practice for prosecutors to allege `knowingly' in plain English...." 55 Wash.App. at 382, 777 P.2d 583.
Based on Nieblas-Duarte, we hold that, under the first prong of the Kjorsvik test, the phrase "unlawfully and feloniously" used in Krajeski's charging document adequately apprised Krajeski that the State was charging him with knowing possession of the firearm.
Krajeski does not argue that the State's failure to plainly allege "knowledge" as an essential element of the crime prejudiced him. It is undisputed that he had actual knowledge of the gun, since he asked his mother whether she found it.
Under Kjorsvik's liberal construction standard, the amended information adequately apprised Krajeski of the charges against him, including the essential element of knowledge, and he was not prejudiced by the State's failure to plainly allege "knowingly."

III. OTHER NEW ISSUES IN APPELLANT'S AMENDED BRIEF
In addition to the issue of knowledge of the firearm based on Anderson, Krajeski attempts for the first time in his amended brief to assign error to numerous findings of fact and to add a Gunwall[4] analysis under the state constitution to the search issue.
The decision whether to consider issues raised for the first time in an appellant's supplemental brief falls within the discretion of this court. State v. Paysse, 80 Wash. 603, 142 P. 3 (1914) (accepting review of issues not mentioned or assigned in opening brief). An appellate court may decline to consider issues untimely raised and properly belonging in an opening brief. See State v. Hudson, 124 Wash.2d 107, 120, 874 P.2d 160 (1994); In re Donohoe, 90 Wash.2d 173, 175, 580 P.2d 1093 (1978); see also State v. Collins, 121 Wash.2d 168, 179, 847 P.2d 919 (1993), and Douglas v. Freeman, 117 Wash.2d 242, 258, 814 P.2d 1160 (1991) (declining to consider issue raised for first time in supplemental brief filed after Supreme Court accepted review).
As a general rule, an appellate court should deny an appellant's motion to amend its opening brief to cure a failure to assign error to the trial court's findings of fact when the motion is filed after the filing of the respondent's brief. Santos v. Mack, 46 Wash.2d 743, 744, 284 P.2d 290 (1955) (citing Paulson v. Higgins, 43 Wash.2d 81, 260 P.2d 318 (1953)). As a general rule, a court is precluded from considering a Gunwall analysis when raised for the first time in a supplemental brief. Hudson, 124 Wash.2d at 120, 874 P.2d 160. A more liberal rule would encourage appellants to untimely raise issues, leading to unbalanced and incomplete development of issues. Hudson, 124 Wash.2d at 120, 874 P.2d 160.
Krajeski's attack on the findings and his Gunwall challenge should have been raised under settled law in his opening brief. We decline to address these additional issues on the merits.
Affirmed.
SEINFELD, P.J., and HOUGHTON, J., concur.
NOTES
[*] Judge Wang is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150(2).
[1] Krajeski was sentenced concurrently to 25 months for possession of stolen property in the first degree, 16 months for possession of stolen property in the second degree, and 38 months for unlawful possession of a firearm in the second degree.
[2] It is of no significance whether Officer Lorberau knew that Krajeski had made other arrangements for the dog or whether the private citizens went farther into the apartment than necessary to get the dog.
[3] It has long been the law in Washington that the phrase "unlawfully and willfully" in an information sufficiently alleges criminal knowledge. See State v. Schuman, 89 Wash. 9, 14, 153 P. 1084 (1915); State v. Muller, 80 Wash. 368, 375, 141 P. 910 (1914); State v. Barker, 43 Wash. 69, 71, 86 P. 387 (1906); State v. Zenner, 35 Wash. 249, 251-52, 77 P. 191 (1904).
[4] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).