# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>TYCAMERON LAKE, aka TIANNA CAMERON, TY LAKE, TYRONE CAMERON LAKE, TY CAMERON,<br><br>Appellant. | No. 52204-7-II<br><br>PART PUBLISHED OPINION |

MAXA, J. – Tycameron Lake appeals her convictions of one count of second degree organized retail theft, two counts of first degree identity theft, one count of second degree identity theft, and two counts of second degree possession of stolen property. In the published portion of the opinion, we hold that there was insufficient evidence to support Lake's conviction of second degree organized retail theft because her theft involving ordering items online from catalogs was not from a "mercantile establishment." In the unpublished portion, we reject Lake's other arguments and the multiple assertions made in her statement of additional grounds (SAG).

Accordingly, we reverse Lake's second degree organized retail theft conviction and remand for the trial court to dismiss that conviction. We affirm all of Lake's other convictions, but we remand for resentencing.

FACTS

In 2017, Lake was living in a senior living apartment complex. In February 2017, she placed three catalog orders with different companies using the names and accounts of other apartment complex residents. She had the items delivered to her as "gifts."

One of the residents noticed that someone had placed an order using her credit account. She reported the suspicious order to the front office and made a fraud complaint with the Vancouver police. After an investigation, the State charged Lake with one count of second degree organized retail theft, three counts of first degree identity theft, and two counts of second degree possession of stolen property.

The facts stated above were presented at trial. At the close of the State's case, Lake moved to dismiss the second degree organized retail theft charge because there was no evidence that she obtained goods form a "mercantile establishment" as required for that charge. The trial court denied the motion.

The jury found Lake not guilty of one count of first degree identity theft but guilty of the lesser degree offense of second degree identity theft. The jury found Lake guilty of the other five charged counts. Lake appeals her convictions.

ANALYSIS

Lake argues that the trial court erred in denying her motion to dismiss because the State failed to present sufficient evidence to prove that she committed second degree organized retail theft. Specifically, she argues that her thefts involving online catalog purchases were not from a mercantile establishment. We conclude that the term "mercantile establishment" is ambiguous, and we apply the rule of lenity to hold that Lake's thefts were not from a mercantile establishment.

A.      LEGAL PRINCIPLES

    1.      Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). Evidence may be insufficient as a matter of law based on an appellate court's interpretation of an undefined statutory provision. *See State v. Engel*, 166 Wn.2d 572, 578-81, 210 P.3d 1007 (2009) (holding that the evidence was insufficient to prove second degree burglary based on the court's definition of "fenced area").

    2.      Statutory Interpretation

Interpretation of a statute is a question of law that we review de novo. *State v. Brown*, 194 Wn.2d 972, 975, 454 P.3d 870 (2019). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* To determine legislative intent, we first look to the plain language of the statute. *Id.* at 976. We consider the language of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent. *Id.*

If a statutory term is undefined, we apply the term's ordinary meaning unless the legislature indicates a contrary intent. *Brown*, 194 Wn.2d at 976. We also may consider dictionary definitions to determine the ordinary meaning of undefined terms. *State v. Wilson*, 10 Wn. App. 2d 719, 727, 450 P.3d 187 (2019).

If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Brown*, 194 Wn.2d at 976. We first attempt to resolve the ambiguity and determine the legislature's intent by considering other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.* If these indications of legislative intent are insufficient to resolve the ambiguity, under the rule of lenity we must interpret the ambiguous statute in favor of the defendant. *State v. Evans*, 177 Wn.2d 186, 192-93, 298 P.3d 724 (2013). We will construe an ambiguous criminal statute against the defendant only where the principles of statutory construction clearly establish that the legislature intended such an interpretation. *Id.* at 193.

B.      MEANING OF "MERCANTILE ESTABLISHMENT"

In order to prove second degree organized retail theft, the State had to prove that Lake committed theft of property with a cumulative value of at least $750 from one or more "mercantile establishments." RCW 9A.56.350(1)(c).[1] The question here is whether fraudulently purchasing items online from a catalog constitutes theft from a mercantile establishment, or whether that term is limited to physical retail stores.

1.     Ordinary Meaning

The legislature has never explicitly defined the term "mercantile establishment." And the undefined term "mercantile establishment" in RCW 9A.56.350, standing alone, does not necessarily reveal whether the legislature intended the statute to apply to online theft. But we can consider related statutes and the statutory scheme as a whole. *Larson*, 184 Wn.2d at 848.

---

[1] RCW 9A.56.350 was amended in 2017. *See* LAWS OF 2017, ch. 329, § 1. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

RCW 9A.56.350 was part of a bill that passed the legislature in 2006 that included former RCW 9A.56.360, which defined the crime of retail theft with special circumstances. LAWS OF 2006, ch. 277. Former RCW 9A.56.360 (2013) also referred to "mercantile establishments" in defining the crime of retail theft with special circumstances:

> (1) A person commits retail theft with special circumstances if he or she commits theft of property from a *mercantile establishment* with one of the following special circumstances:
> (a) To facilitate the theft, the person *leaves the mercantile establishment through a designated emergency exit*;
> (b) The person was, at the time of the theft, in possession of an item, article, implement, or device used, under circumstances evincing an intent to use or employ, or designed *to overcome security systems* including, but not limited to, lined bags or tag removers.

(Emphasis added.)

Former RCW 9A.56.360(1)(a) and (b) show that the legislature intended in that provision to curtail thefts from physical retail stores. Only a physical store has a "designated emergency exit" and employs security systems that can be overcome by "lined bags" or "tag removers." Former RCW 9A.56.360(1)(a) and (b). Lake argues that because RCW 9A.56.350 was part of the same legislation as former RCW 9A.56.360, it can be inferred that the legislature also intended RCW 9A.56.350 to address theft from physical retail stores. However, it also is possible that the two statutes were intended to address different scenarios.

We also can consider dictionary definitions to determine the plain meaning of "mercantile establishment." *See Wilson*, 10 Wn. App. at 727. The State relies on vocabulary.com[2] and thefreedictionary.com,[3] both of which define "mercantile establishment" as "a place of business for retailing goods." Webster's Dictionary defines "mercantile" as "relating

---

[2] https://www.vocabulary.com/dictionary/mercantile%establishment (last visited June 19, 2019).

[3] https//www.thefreedictionary.com/mercantile+establishment (last visited June 19, 2019).

to merchants or trading" and defines "establishment" to include "a more or less fixed and usu. sizable place of business or residence together with all the things that are an essential part of it (as grounds, furniture, fixtures, retinue, employees)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1412, 778 (2002).

The State claims that the term "place of business" would include an online retailer's business operations. This interpretation is reasonable. But another reasonable interpretation is that a merchant's "place of business" is a physical retail store, not the office building or warehouse where a retailer conducts online business.

We conclude that the term "mercantile establishment" in RCW 9A.56.350 is ambiguous.

2.    Resolving Ambiguity

Because RCW 9A.56.350 does not unambiguously apply only to physical retail stores, we must attempt to resolve that ambiguity by considering other sources of intent. One source that we can consider is the legislative history of that statute. *Brown*, 194 Wn.2d at 976.

The bill reports available for HB 2704 do not provide much insight into the intent of the legislature, but they do show that the people testifying in support of the bill were focused on physical retail stores. The House bill report stated as follows regarding the testimony in support of the bill:

> Organized retail theft is a serious problem in this state and it is growing. Organized retail theft is not the same as traditional shoplifting. These criminals are bold, violent, and extremely organized. These thefts are responsible for the majority of merchandise lost in retail establishments. These criminals are aware of the different state laws. When a state gets tough on these criminals, they move on to other states. Anti-theft devices are ineffective in stopping organized retail theft.

H.B. REP. ON H.B. 2704, 59th Leg., Reg. Sess. (Wash. 2006). The Senate report summarized the testimony in favor of the bill.

>   Retailers are struggling to deal with organized groups conducting serial thefts. These are not casual criminals; they attack stores in a concerted effort to take large quantities of goods for resale.

S.B. REP. ON H.B. 2704, 59th Leg., Reg. Sess. (Wash. 2006).

The testimony in favor of a bill is not necessarily determinative of the legislature's intent. *Evans*, 177 Wn.2d at 217. But the legislative history fails to resolve the ambiguity in favor of the State. And as discussed above, the language in former RCW 9A.56.360 – part of the same bill as RCW 9A.56.350 – arguably is inconsistent with the State's position. Finally, we cannot identify any other indicia of legislative intent, principles of statutory construction, or relevant case law that would allow us the resolve the ambiguity regarding the meaning of "mercantile establishment."

Because the term "mercantile establishment" remains ambiguous, we must apply the rule of lenity and interpret the ambiguous statute in favor of Lake. *See id.* at 192-93. The interpretation that favors Lake is that the term "mercantile establishment" in RCW 9A.56.350 refers to theft from a physical retail store and does not apply to theft from an online retailer.

The State presented no evidence that Lake's theft was from a physical retail store. Therefore, we hold that the trial court erred in denying Lake's motion to dismiss because the evidence was insufficient to convict Lake of second degree organized retail theft.

                                    CONCLUSION

We reverse Lake's second degree organized retail theft conviction, and we remand for the trial court to dismiss that conviction. We affirm all of Lake's other convictions, but we remand for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

Officer Timothy Lear interviewed Lake and arrested her on an outstanding arrest warrant. Lear escorted Lake to his patrol car, where he informed her that she would not be able to take her walker with her to the jail.

Julia Deale, the apartment complex property manager, took the walker back to Lake's apartment. When Deale went into Lake's apartment, she noticed a television and printer and told Lear. Lear relayed this information to another officer, who obtained a search warrant on Lake's apartment based in part on Deale's observations.

Law enforcement executed the warrant and seized a television, a printer, a knife set, pillows, clothing with tags still attached, and a dress matching one from one of the retailer's website. They also seized a checkbook belonging to a deceased former resident of the apartment complex, catalogs bearing the name, address, an order code and a pin number of the two residents in whose names Lake made the orders, and three letters claiming to be from the deceased resident to different retailers asking to have orders sent to Lake as birthday gifts. The letters were dated February and March 2017 even though the resident had died in October 2016.

Before trial, Lake moved to suppress the search warrant on the basis that Deale was a state agent when she took Lake's walker back to Lake's apartment. The trial court denied the motion.

8

A.      SEARCH BY PRIVATE PERSON

Lake claims that the trial court erred in denying her motion to suppress the evidence seized as a result of Deale's observations in Lake's apartment because Deale was acting as a state agent. We disagree.[4]

1.      Legal Principles

The Fourth Amendment to the United States Constitution prohibits warrantless searches. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). However, the Fourth Amendment does not apply to intrusions by a private person unless that person is acting as a government agent. *State v. Krajeski*, 104 Wn. App. 377, 382-83, 16 P.3d 69 (2001). Two factors are critical for determining whether a private person is acting as a state agent: "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." *Id.* at 383.

We review whether the trial court's written findings from a suppression hearing are supported by substantial evidence. *Froehlich*, 197 Wn. App. at 837. Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We do not weigh conflicting evidence. *State v. Boyer*, 200 Wn. App. 7, 13, 401 P.3d 396 (2017). A trial court's determination that a search did not violate the Fourth Amendment because it was a private search is a legal conclusion that we review de novo. *Krajeski*, 104 Wn. App. at 382.

---

[4] Lake also alleged in an assignment of error that the trial court had failed to enter findings of fact and conclusions of law following the suppression motion. But the court did enter findings and conclusions, although not for several months following trial.

2.    Analysis

Lake disputes the trial court's findings that (1) Deale asked if Lake wanted Deale to put her walker in Lake's apartment and Lake said yes, and (2) Deale was not directed or encouraged by law enforcement to enter Lake's apartment.  Lake claims that these findings are inconsistent with her own testimony that Lear instructed Deale to take the walker to Lake's apartment and that Lake never consented.

At the suppression hearing, Deale testified that when Lear explained to Lake that she could not take the walker, Deale asked Lake for permission to put the walker in Lake's apartment for her and Lake consented.  She also testified that Lear did not encourage her to take the walker to Lake's apartment.  Lear testified that he did not recall any discussion between Lake and Deale about the walker and that he did not encourage Deale to enter Lake's apartment.

Lake provided conflicting testimony.  However, the trial court expressly found that the testimony of Deale and Lear was credible and that Lake's testimony was not credible.  We conclude that substantial evidence supported the challenged findings of fact.

In addition, the trial court's findings support the court's conclusions of law that Deale was not acting as a government agent and was not conducting an illegal intrusion on Lake's privacy.  The findings show that Lear did not know of or acquiesce in Deale's conduct and that Deale did not intend to assist law enforcement when she returned the walker to Lake's apartment.

Therefore, we hold that the trial court did not err in denying Lake's suppression motion based on Deale's observations in Lake's apartment.

B.     SAG CLAIMS

In her SAG, Lake makes multiple assertions of error.  We reject these assertions because they either rely on matters outside the record, are not supported by the record, or are immaterial to her appeal or beyond the scope of the appeal.

1.     Matters Outside the Record

We cannot consider assertions based on matters outside the record in this direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).  These assertions are more properly raised in a personal restraint petition.  *Id.*

We reject the following assertions because they are outside the record: (1) that Lake never signed for the items that were delivered to the apartment complex and that the items removed from her apartment belonged to her when she moved in;  (2) that the State failed to identify the style and model of the items taken from her apartment and that she had evidence that she obtained these items either as gifts or rewards; (3) that the State should have produced surveillance videos from the apartment complex that would have shown that she could not access the mailboxes or reach into the garbage and recycling bins; (4) that the catalogs could not have been in the mailboxes because they are too thick and would prevent the doors from closing; and (5) that her bail was set too high and even when bail was lowered she could not afford it because she is on Social Security disability.

2.     Not Supported by the Record

We reject the following assertions because they are not supported by the record: (1) that the prosecutor lied at trial about her being able to open other people's mailboxes; (2) that she had an all-white jury and that she was entitled to have minorities on the jury, but the trial court denied the motion noting that there was at least one and possibly more minorities on the jury; (3)

that the judge and prosecutor were racist and biased; (4) that the judge and prosecutor told the jury that she is transgender when in fact she is intersex or hermaphrodite; (5) that during voir dire the jury said they would find her guilty if she did not testify based on her skin color; (6) that the jury reached its verdict in only 30 minutes because they were in a hurry or had prior engagements; (7) that the prosecutor misled the jury about the mailboxes; (8) that the prosecutor misled the jury by claiming that her mailbox key could open over 100 mailboxes; (9) that the judge and prosecutor misled the jury by claiming that she was some kind of animal and therefore she was prejudged before trial; (10) that some of the items she was accused of stealing were old, with different styling, and dusty; and (11) that the judge and prosecutor were jerks because they made her come to court even though she was too sick and contagious to come to court; (12) that the restraining order relating to the victims must be lifted because the State failed to prove the thefts; and (13) that she was entitled to a dismissal of all charges because she did not have a minority judge and a mixed jury.

> 3. Immaterial or Beyond the Scope of Appeal

We reject the following assertions because they are immaterial to Lake's appeal or are beyond the scope of the appeal: (1) that the State failed to show that she used the deceased resident's checks, which the State did not have to prove; (2) that the Clark County Jail wrongfully arrested and booked her under aliases that she never used; (3) that her father was a warden at the Monroe state prison and at the King County jail and that she, her brother, her aunt, and her sister-in-law also worked in corrections; (4) that she contracted MRSA, food poisoning, and e-coli while in the Clark County Jail and that the jail staff refused to follow her doctor's dietary restrictions; (5) that her removal from the apartment complex left her homeless, crippled, and without a walker; (6) that at the Clark County Jail she was subjected to improper staff

behavior, racism, and unhealthy conditions, and (7) that the Clark County Jail tampered with her criminal background to show false charges, crimes, and time served.

CONCLUSION

We reverse Lake's second degree organized retail theft conviction and remand for the trial court to dismiss that conviction. We affirm all of Lake's other convictions, but we remand for sentencing.

_MAXA, J._
MAXA, J.

We concur:

_SUTTON, A.C.J._
SUTTON, A.C.J.

_GLASGOW, J._
GLASGOW, J.