**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

December 13, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55881-5-II |
| Respondent, | |
| v. | |
| RANDY GENE RICHTER, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Randy Gene Richter was convicted of three counts of delivery of a controlled substance within 1,000 feet of a school bus route stop and one count of possession of a controlled substance with intent to deliver. The trial court imposed an exceptional upward sentence of 168 months based in part on former RCW 69.50.435(1)(c) (2003), which allowed the trial court to double statutory maximum sentences for drug offenses that occurred in certain locations.

Richter appeals his sentence, arguing that under his interpretation of the statutory language, this doubling did not apply to offenses within the school bus route stop zone. He also contends that his sentence violates due process under the reasoning in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and that the former doubling statute was unconstitutionally vague. Finally, Richter argues, and the State concedes, that his offender score was miscalculated and the trial court erroneously imposed community custody supervision fees.

We reject Richter's statutory interpretation and constitutional arguments, but we agree that his offender score was miscalculated. Accordingly, we remand for the trial court to resentence Richter with a corrected offender score and to strike the supervision fees, but we otherwise affirm.

No. 55881-5-II

FACTS

In summer 2013, Richter sold methamphetamine to a confidential informant in a series of three controlled buys. Richter was arrested in August 2013, and officers found methamphetamine and drug paraphernalia in his vehicle. The State charged Richter with three counts of delivery of a controlled substance, all with an aggravating factor that the delivery occurred within 1,000 feet of a school bus route stop, and one count of possession of a controlled substance with intent to deliver.

The transportation manager and district safety officer for the Longview School District testified during Richter's trial. He explained that in order to create school bus route stops, he and other school district staff "determine where needs are for bus stops and then . . . create bus stops and assign buses to them." Verbatim Report of Proceedings (VRP) (Apr. 25, 2014) at 48. He also identified two bus stops that were close to the controlled buy location, and another witness identified the locations of the controlled buy and the bus stops on a map.

A jury convicted Richter of all charges and made special findings that the three deliveries of a controlled substance occurred within 1,000 feet of a school bus route stop.

A.      Original Sentencing and First Resentencing

The trial court calculated Richter's offender score as 28 due to multiple prior felony convictions and juvenile offenses. Thus, it imposed an exceptional sentence under the free crimes aggravator in RCW 9.94A.535(2)(c), which authorizes exceptional sentences when a defendant's high offender score would allow some of their current offenses to go unpunished. The trial court sentenced Richter to an exceptional upward sentence of 168 months for each of his four convictions, running concurrently.

2

No. 55881-5-II

The trial court added three 24-month school bus route stop zone enhancements for Richter's three delivery convictions, running consecutively to the other sentences and each other. The total confinement imposed was 240 months, which was double the statutory maximum sentence for each of Richter's crimes. *See* RCW 69.50.401(2)(b).[1] The trial court justified a doubling of the statutory maximum sentence based on former RCW 69.50.408 (2003), which authorized such doubling on drug offenses if there were prior drug-related convictions on a defendant's record. Richter had several drug possession convictions on his record at the time of his first sentencing.

Richter appealed his sentence, and we held that his three 24-month school bus route stop zone enhancements were not required to run consecutively to one another. *State v. Richter*, No. 46297-4-II, slip op. at 14 (Wash. Ct. App. Jan. 12, 2016) (unpublished), https://www.courts.wa. gov/opinions/pdf/D2%2046297-4-II%20Unpublished%20Opinion.pdf; *see also State v. Conover*, 183 Wn.2d 706, 718-19, 355 P.3d 1093 (2015). We remanded for resentencing. *Richter*, No. 46297-4-II, slip op. at 23.

At Richter's first resentencing, the trial court adjusted his three 24-month school bus route stop enhancements to run concurrently to each other. The total confinement imposed was 192 months.

B.     Second Resentencing

In 2021, the Washington Supreme Court held in *Blake* that Washington's strict liability drug possession statute, former RCW 69.50.4013(1) (2017), violated due process and was

---

[1] Sections of chapter 69.50 RCW have been amended since 2013. If the amendment did not affect the language of the section cited in this opinion, we cite to the current version of the statute.

No. 55881-5-II

therefore void. 197 Wn.2d at 174. As a result of this decision, the trial court vacated Richter's prior simple possession convictions and recalculated his offender score as 24. During resentencing, the State noted that Richter's offender score should be 24 rather than 23 because he "has a prior juvenile sex [offense] that counts as two points on these drug [convictions]." VRP (May 13, 2021) at 53.

Because Richter no longer had any prior drug convictions on his record, former RCW 69.50.408, which the trial court had previously used to double Richter's statutory maximum sentence, no longer applied. Instead, at this resentencing the trial court relied on former RCW 69.50.435(1)(c), the school bus route stop zone statute, to justify doubling Richter's statutory maximum sentence from 120 months to 240 months. When interpreting former RCW 69.50.435(1), the trial court acknowledged defense counsel's argument that this statute should not be read to allow doubling of the statutory maximum sentence in these circumstances. But the trial court ultimately determined that defense counsel's reading of the statute rendered much of the statutory language meaningless.

At this second resentencing, the trial court sentenced Richter to another exceptional sentence of 144 months for each of his three delivery convictions and 120 months on his possession with intent to deliver conviction, all running concurrently. In addition, it imposed three 24-month school bus route stop zone enhancements, running concurrently to each other. The total confinement imposed was 168 months. As in Richter's other sentencing hearings, the trial court justified the exceptional sentence under the free crimes aggravator. RCW 9.94A.535(2)(c). The trial court explained that the overall decrease in sentence was due to Richter's now lower offender score of 24 and his demonstrated efforts toward rehabilitation while imprisoned. The trial court

4

No. 55881-5-II

also stated that it would "not impos[e] any other fees or costs" outside of the required $500 victim assessment.

Richter appeals his sentence.

ANALYSIS

I. INTERPRETATION OF FORMER RCW 69.50.435(1)

RCW 69.50.401(1) provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." We apply the relevant sentencing statutes in effect at the time Richter committed the offenses at issue. *State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001). The version of former RCW 69.50.435(1) in effect in 2013 allowed the statutory maximum sentence for RCW 69.50.401 violations to be doubled if the violations occurred in sufficient proximity to certain places, such as schools and school bus route stops. Specifically, former RCW 69.50.435(1) in effect in 2013 provided:

> Any person who violates RCW 69.50.401 by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under RCW 69.50.401 . . .
> . . . .
> (c) Within one thousand feet of a school bus route stop designated by the school district;
> . . . .
> (i) At a civic center designated as a drug-free zone by the local governing authority; or
> (j) Within one thousand feet of the perimeter of a facility designated under (i) of this subsection, if the local governing authority specifically designates the one thousand foot perimeter
> *may be punished* by a fine of up to twice the fine otherwise authorized by this chapter . . . or *by imprisonment of up to twice the imprisonment otherwise authorized by this chapter* . . . or by both such fine and imprisonment.

(Emphasis added.) The italicized language begins on a new line in this version of the statute.

Former 69.50.435(1).

5

No. 55881-5-II

Richter argues that under the plain language of former RCW 69.50.435(1), statutory maximum sentence doubling only applied to the locations listed in (j), and the trial court erred when it doubled the statutory maximum for his sentence based on earlier subsection (c). The State contends that such a reading of the statute would produce an absurd result because grammatically, there would be no purpose to listing locations (a) through (i) if the doubling language did not apply to those subsections. We agree with the State.

A.      Relevant Principles of Statutory Interpretation

We review questions of statutory interpretation de novo. *State v. Wolvelaere*, 195 Wn.2d 597, 600, 461 P.3d 1173 (2020). The primary goal of statutory interpretation is to "determine the legislature's intent." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). The plain language of the statute, the context of the statute, and the "'statutory scheme as a whole'" are all the "'surest indication'" of legislative intent. *Wolvelaere*, 195 Wn.2d at 600 (internal quotation marks omitted) (quoting *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). If, after an analysis of those sources, the plain meaning of the statute is unambiguous, we apply that meaning. *Id*. If there is more than one reasonable interpretation, the statute is "ambiguous and the court 'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *State v. Brown*, 194 Wn.2d 972, 976, 454 P.3d 870 (2019) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

For statutes that contain lists, we generally apply the last antecedent rule, which posits that modifying or qualifying language usually modifies the phrase right before it—the last antecedent. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). If there is a comma before the qualifying language, we generally recognize the comma as evidence that the qualifier is intended

6

No. 55881-5-II

to apply to all of the previously listed antecedents "'instead of only the immediately preceding one.'" *Id*. (internal quotation marks omitted) (quoting *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006)). Semicolons are stronger indicators of separation than commas. *Dep't of Lab. & Indus. v. Slaugh*, 177 Wn. App. 439, 448, 312 P.3d 676 (2013).

However, we do not apply the last antecedent rule if "applying the rule would result in an absurd or nonsensical interpretation." *Bunker*, 169 Wn.2d at 578. In general, "[s]tatutes should be construed to effect their purpose and unlikely, absurd[,] or strained consequences should be avoided." *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987). Additionally, all language in a statute must be given effect, "'with no portion rendered meaningless or superfluous.'" *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). A syntactically incorrect result weighs against an offered statutory interpretation. *Berrocal v. Fernandez*, 155 Wn.2d 585, 592, 121 P.3d 82 (2005).

If all of these principles do not "resolve [an] ambiguity," the rule of lenity applies in criminal cases, requiring that we "interpret [an] ambiguous statute in favor of the defendant." *State v. Lake*, 13 Wn. App. 2d 773, 777, 466 P.3d 1152 (2020).

B.        Plain Language and Grammar in Former RCW 69.50.435(1)

Richter relies on the punctuation of former RCW 69.50.435(1) to argue that the statute was ambiguous as to whether the statutory maximum sentence doubling language appearing in subsection (j) applied to subsections (a) through (j), or only to subsection (j).

There were semicolons separating each location in former RCW 69.50.435(1)'s list, indicating distinct separation between them. Additionally, there was no comma between the

7

No. 55881-5-II

location listed in subsection (j) and the doubling language that followed. Former RCW 69.50.435(1). Application of the last antecedent rule would usually mean that the doubling language only applied to subsection (j), which mentions civic centers and locations designated in subsection (i). *Id.* However, when the legislature adopted the version of the statute in effect in 2013, it put the doubling language on a new line after the location listed in subsection (j). *Id.* This new line, like a comma, suggests that the doubling language applied to all antecedents, not just subsection (j).

Moreover, if the doubling language did not apply to former RCW 69.50.435(1)(a) through (j), then section (1) as a whole did not contain a grammatically correct sentence. Without the doubling language found after subsection (j), the former statute as it relates to the school bus route stop zone reads, "Any person who violates RCW 69.50.401 by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance . . . (c) [w]ithin one thousand feet of a school bus route stop designated by the school district[.]" Former RCW 69.50.435(1). It is highly unlikely that the legislature intended subsections (a) through (i) not to make grammatical sense. Without "may be punished by . . . imprisonment of up to twice the imprisonment otherwise authorized by this chapter," the language in former RCW 69.50.435(1)(a) through (i) was nonsensical and had no purpose, and we must assume the legislature intended all of its language to have meaning. *Spokane County*, 192 Wn.2d at 458.

Richter asserts that in the context of the statutory scheme as a whole, his interpretation does not produce an absurd result; the statute still had purpose because controlled substance violations in all locations in subsections (a) through (j) were subject to a mandatory 24-month sentencing enhancement under RCW 9.94A.533(6). But this would require us to hold that the only purpose

8

No. 55881-5-II

for former RCW 69.50.435(1)(a) through (i) was to provide a list of locations where controlled substance violations incurred consequences from an entirely different and unreferenced statute. This is still an absurd result.

The State's interpretation of former RCW 69.50.435(1) is also consistent with *State v. Bennett*, 168 Wn. App. 197, 209, 275 P.3d 1224 (2012). Although Richter's interpretation was not specifically argued in *Bennett*, we concluded in the opinion that former RCW 69.50.435(1)'s maximum sentence doubling applied to controlled substance violations occurring within 1,000 feet of a school bus route stop. *Id.*

In sum, we construe statutes to avoid absurd results, and Richter's reading of former RCW 69.50.435(1) would be grammatically nonsensical. Therefore, it is not a reasonable alternative interpretation that creates ambiguity. Under the plain language of the statute, the trial court had discretion to apply the doubling language in former RCW 69.50.435(1) to raise Richter's statutory maximum sentence for his delivery convictions from 120 months to 240 months, thereby allowing the trial court to set a sentence of 168 months of total confinement.

C.    Legislative History

Even if we were to find some ambiguity in the legislature's drafting, the legislative history of former RCW 69.50.435(1) reveals legislative intent that the statutory maximum sentence doubling applied to controlled substance violations committed in all locations in former RCW 69.50.435(1)(a) through (j), including those within 1,000 feet of a school bus route stop.

A prior version of RCW 69.50.435, adopted in 1991, contained several of the locations also in later versions of the statute, but the locations were separated by commas, and all were

9

No. 55881-5-II

clearly subject to the statutory maximum sentence doubling. This prior list included violations

occurring within 1,000 feet of a school bus route stop:

> Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance . . . to a person in a school or on a school bus or within one thousand feet of a school bus route stop designated by the school district or within one thousand feet of the perimeter of the school grounds, in a public park or on a public transit vehicle, or in a public transit stop shelter may be punished by . . . imprisonment of up to twice the imprisonment otherwise authorized by this chapter.

Former RCW 69.50.435(a) (1991). In 1994, the Supreme Court applied this language and

concluded that "RCW 69.50.401 enumerates the maximum penalties, in fines and imprisonment,

for certain drug crimes, and [former] RCW 69.50.435 [(1991)] allows those penalties to be doubled

when the crimes are committed in specified locations." *State v. Silva-Baltazar*, 125 Wn.2d 472,

476, 886 P.2d 138 (1994).

Then in 1996, the legislature amended the statute by allowing municipalities to designate

certain new drug-free zones as qualifying locations on the statutory list. Former RCW 60.50.435(a)

(1996). The 1996 bill report stated, "Publicly-owned and publicly-operated civic centers

designated by a local governing authority as drug-free zones are *added as a new category to the*

*current list of places where the penalties for drug-related crimes are doubled*. Local governing

authorities may also designate a 1,000 foot perimeter around such facilities as drug-free zones."

FINAL B. REP. ON SUBSTITUTE S.B. 5140, 54th Leg., Reg. Sess. (Wash. 1996) (emphasis added).

10

No. 55881-5-II

In 1996, the legislature began separating each location on the list with semicolons and numbered them (1) through (9).[2] Former RCW 69.50.435(1) (1996). The numbers in the statutory list of locations were later changed to letters (a) through (j). Former RCW 69.50.435(1) (2003). Nothing in the 1996 bill report, when the relevant amendments occurred, indicates the legislature intended to eliminate the doubling option for all but the newly-added civic centers. *See* FINAL B. REP. ON SUBSTITUTE S.B. 5140. Instead, the bill report demonstrates legislative intent that the new municipally-defined "drug-free civic centers" listed in former RCW 69.50.435(1)(j) (2003) were meant as additions to a list of existing locations for which maximum sentences could be doubled on controlled substances violations. *Id.* Thus, even if the statute were ambiguous, the legislative history makes it clear that the legislature intended former RCW 69.50.435(1)(a) through (j) to provide a list of multiple locations where the statutory maximum penalties for drug-related crimes could be doubled.

In sum, the trial court did not err when it applied former RCW 69.50.435(1)(c) (2003) to impose a sentence of up to double the statutory maximum sentence.

## II. DUE PROCESS

A.       Strict Liability

Richter contends that the application of former RCW 69.50.435(1)(c) violated due process under *Blake* because the statute authorized courts to double statutory maximum sentences for drug violations within 1,000 feet of a school bus route stop without requiring proof that the defendant

---

[2] The 1996 version is otherwise identical to the later 2003 version of the statute except for the 1997 addition of a last location, "In a public housing project designated by a local governing authority as a drug-free zone." Former RCW 69.50.435(6) (1997).

No. 55881-5-II

knew the violation occurred within this zone. 197 Wn.2d at 186. The State responds that *Blake*'s

reasoning only applies to passive nonconduct, and Richter's affirmative criminal conduct of selling

methamphetamine distinguishes this case. We review alleged due process violations de novo. *In*

*re Welfare of M.B.*, 195 Wn.2d 859, 867, 467 P.3d 969 (2020).

In *Blake*, the Supreme Court declared Washington's statute criminalizing simple

possession of a controlled substance to be unconstitutional because the statute allowed conviction

even if the possession was unknowing. 197 Wn.2d at 186. The court explained, "[D]ue process

clause protections generally bar state legislatures from taking *innocent and passive* conduct with

no criminal intent at all and punishing it as a serious crime." *Id.* at 173 (emphasis added). The court

emphasized that "active *trafficking* in drugs . . . is not innocent conduct. States have criminalized

knowing drug possession nationwide, and there is plenty of reason to know that illegal drugs are

highly regulated. The legislature surely has constitutional authority to regulate drugs through

criminal and civil statutes." *Id.* at 183.

The *Blake* court then distinguished the unconstitutional simple possession statute from

other valid strict liability crimes. *Id.* at 184. The difference hinges on whether the statutes penalize

conduct or passive and innocent nonconduct. *Id.* at 195. For example, rape of a child is a valid

strict liability crime that involves affirmative conduct. *Id.* at 194; *see also State v. Johnson*, 173

Wn.2d 895, 902, 270 P.3d 591 (2012). Moreover, RCW 2.48.180(2)(a), a statute punishing the

unlawful practice of law, is a valid strict liability statute because it requires the affirmative conduct

of practicing the law illegally, even though it applies regardless of ignorance that such conduct

constituted the practice of law. *Blake*, 197 Wn.2d at 194; *see also State v. Yishmael*, 195 Wn.2d

12

No. 55881-5-II

155, 172-77, 456 P.3d 1172 (2020). It is the "intentional activity" of the practice that matters. *Blake*, 197 Wn.2d at 194.

The conduct addressed in former RCW 69.50.435(1) is "manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance." The statute imposed increased consequences for affirmative conduct, not the kind of passive nonconduct that the *Blake* court declared to be innocent. The *Blake* court specifically noted that "*trafficking* in drugs . . . is not innocent conduct," and the court explained that due process gives legislators wide latitude in their authority to regulate such conduct. 197 Wn.2d at 183. Here, although Richter may not have known that he was within a school bus route stop zone, he does not dispute that he intended to sell methamphetamine, and the delivery amounted to affirmative conduct. Therefore, the *Blake* court's reasoning does not apply to this case or to former RCW 69.50.435(1) more generally.

The application of former RCW 69.50.435(1)(c) to double statutory maximum sentences on certain drug trafficking violations did not punish unknowing innocent conduct, so it did not violate due process under *Blake*.

B.     Vagueness

Richter argues that former RCW 69.50.435(1)(c) is unconstitutionally vague. Specifically, he contends that legal standards for the definition of "school bus route stops" have changed such that defendants are no longer reasonably able to ascertain where the school bus route stops are located. The State replies that despite these changes, Richter still had reasonably available means to seek out the location of school bus route stops, and former RCW 69.50.435(1)(c) was not unconstitutionally vague under applicable case law.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55881-5-II

"A statute is unconstitutionally vague if . . . the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it forbids." *State v. Becker*, 132 Wn.2d 54, 61, 935 P.2d 1321 (1997) (plurality opinion). In *State v. Coria*, the Supreme Court held that former RCW 69.50.435(1)(c) (1991) was not unconstitutionally vague. 120 Wn.2d 156, 159, 839 P.2d 890 (1992). In response to concerns about a defendant's ability to ascertain the location of school bus route stops, the majority in *Coria* concluded that "information regarding the locations of the stops was available through such means as observing the gathering of schoolchildren waiting for their school buses, or contacting local schools or the director of transportation for the school district." *Id.* at 167. The court was unconcerned with the unlikelihood that someone manufacturing or dealing drugs would take these steps to ascertain the location of school bus route stops, so long as there were reasonably available means for doing so. *Id.* ("It may be unrealistic, of course, to expect drug dealers to take these steps, but that is irrelevant to the question whether the statute is unconstitutionally vague.").

At the time *Coria* was decided, the law required school bus route stops to be "designated on maps submitted by school districts to the office of the superintendent of public instruction." Former RCW 69.50.435(f)(3) (1991). A school bus route stop under the current statutory scheme is now simply defined as "a school bus stop as designated by a school district." RCW 69.50.435(6)(c). Although the *Coria* court briefly discussed the availability of these school bus route stop maps to the public, it ultimately concluded that "[i]n any case, the defendants did not need to gain access to the master map in order to have determined the locations of the school bus route stops involved here because that information was readily available through other means," including those listed above. 120 Wn.2d at 168. Though standards have changed for defining

14

No. 55881-5-II

"school bus route stops"—school districts are no longer legally required to submit a map with the bus stop locations to the state superintendent—these changes do not render former RCW 69.50.435(1)(c) unconstitutional.

Based on *Coria*, other cases have held that the school bus route stop zone sentencing enhancement is not unconstitutionally vague across a broad range of situations. This court held that the school bus route stop enhancement was not vague where the school bus route stop was an unmarked public transit stop and public buses picked up children for transportation to school. *State v. Davis*, 93 Wn. App. 648, 652-53, 970 P.2d 336 (1999). Division One confirmed the constitutionality of a school bus route stop enhancement where a defendant was unaware of the school bus stop and conducted the drug offense by a nearby tavern. *State v. Johnson*, 116 Wn. App. 851, 863, 68 P.3d 290 (2003). Division Three concluded that a transportation director's designation of school bus stops, regardless of submission to the school board, was sufficient for the school bus route stop enhancement to apply. *State v. Sanchez*, 104 Wn. App. 976, 979, 17 P.3d 1275 (2001).

Richter relies on *Becker*, 132 Wn.2d at 63, and *State v. Akers*, 136 Wn.2d 641, 965 P.2d 1078 (1998) (per curiam), but those cases are distinguishable. In *Becker*, a four-justice plurality of the Supreme Court reasoned under the specific facts of that case that the defendant's drug trafficking within 1,000 feet of a building containing a youth education program could not be subject to former RCW 69.50.435(1)(d) (1996), because there was no viable way for someone of ordinary intelligence to determine the program was actually a school. 132 Wn.2d at 63. The general equivalency degree program was so nontraditional in nature that there was a "complete lack of information available regarding [its] status as a school." *Id.* at 62. Classes were held in an office

15

No. 55881-5-II

building where the only indication of scholastic activity was a sign describing the school as a "'Youth Education Program.'" *Id.* at 56, 58-59. Additionally, the school was not listed as a school by the superintendent's office, and one could not reliably determine the school's existence by calling the school district office. *Id.* at 58-59, 63. Then, in *Akers*, the Supreme Court reiterated this reasoning in a similar case involving the same youth education program in a per curiam opinion adopted by the entire court. 136 Wn.2d at 642.

Richter's case is unlike *Becker* and *Akers* because those defendants were not able to reasonably ascertain the location of the nontraditional school through objective means like calling the district office or observing schoolchildren. Richter, in contrast, had other reasonably available means identified in *Coria* to determine the location of school bus route stops within 1,000 feet of his drug offenses. We are not permitted to ignore *Coria*'s plain holding. *E.g.*, *Sluman v. State*, 3 Wn. App. 2d 656, 696, 418 P.3d 125 (2018).

The doubling of statutory maximum sentences for controlled substances violations within 1,000 feet of a school bus route stop is not unconstitutionally vague.

### III. OFFENDER SCORE

Richter argues, and the State concedes, that the trial court erred in recalculating Richter's offender score as 24 instead of 23.

Former RCW 9.94A.510 (2002) assigned standard sentencing ranges based in part on the offender score. RCW 9.94A.530(1). Former RCW 9.94A.525(13) (2011) stated, "[I]f the present conviction is for a drug offense and the offender has a criminal history that includes a sex offense . . . count three points for each adult prior felony drug offense conviction and two points for each juvenile *drug* offense." (Emphasis added.)

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55881-5-II

Richter's offender score calculation contained an error. At Richter's resentencing in 2021, the State told the trial court the wrong offender store, claiming that two points should be added to Richter's offender score based on a prior juvenile *sex* offense, but former RCW 9.94A.525(13) called for two points for each juvenile *drug* offense where the offender has a prior sex offense. Thus, Richter's offender score was calculated as 24 on resentencing. The State now concedes that Richter's prior juvenile sex offense should have added only one point, and Richter's offender score should have been 23.

We agree. The State does not argue here that the erroneous offender score was harmless. We therefore remand for resentencing based on a proper calculation of Richter's offender score as 23.

IV. COMMUNITY CUSTODY SUPERVISION FEES

Richter argues that community custody supervision fees were inadvertently imposed. The State concedes this issue because the trial court expressly stated it would not impose fees that were not mandatory. Community custody supervision fees are not mandatory. *See* former RCW 9.94A.703(2)(d) (2009). It appears the trial court inadvertently imposed these fees, and the trial court should strike the community custody supervision fees on remand.

No. 55881-5-II

## CONCLUSION

We accept the State's concessions and remand for the trial court to strike the supervision

fees and resentence Richter using his correct offender score, but we otherwise affirm.

Glasgow, C.J.

I concur:

Lee, J.

18

No. 55881-5-II

PRICE, J. (concurring) — I agree with the majority's well-reasoned opinion. I also agree with its decision to remand for resentencing even though Richter's offender score changed only slightly from 24 to 23. *See* majority at 16-17. But I agree to this portion of the opinion *solely* because the issue was conceded by the State. While I acknowledge there is arguably conflicting case law on this issue, there is a basis to hold against remanding for resentencing when only a slight change in the offender score does not change the standard range. But the State makes no such argument here.

With the State's decision to concede the issue, I do not disagree with the majority's decision to accept this concession and remand for resentencing.

I respectfully concur.

_____
PRICE, J.